Good morning, Your Honors. May it please the Court, Mark Vetterman for the United States. In this multi-million dollar tax fraud case, in reducing defendant's sentence to prison, the District Court stated that prison sentences have no bearing on deterrence in criminal tax cases. This statement was just plain wrong and amounts to procedural and substantive error. First, the District Court gave no basis for this ad hoc statement, and the statement is contrary to the guidelines that provide that deterrence through significant sentences is the main goal of tax prosecution. Well, I don't know whether that matters, but is it contrary to the statute as well? Well, 3553 also provides that providing adequate deterrence is one of the four main goals of any sentencing. So Congress also has stated that deterrence, looking at deterrence, is very important. Moreover, there's numerous – there's case law that we've cited in our brief from several circuits that say that the central goal of tax prosecutions is significant sentences that deter the conduct. In fact – But what do we do after Booker with a judge who says, well, I don't think so? I mean, that's what he's saying. He's saying, you know, in my observation, that's wrong. Well, that's correct. And the Supreme Court has said that a district court can disagree with policy and the guidelines. But the Supreme Court also said that the district court has to provide reasons and, more specifically, should provide case-specific reasons on why it's disagreeing with the policy in that case. Well, in this case – No, go ahead, if you're still answering the question. No, go ahead. In this case, the judge specifically suggested that this was not a departure. Yes, that's correct. That this was instead, in his language, and I focused on that language, a variance. That's correct. And in my view, that variance versus departure language has to do with notice, first of all. If he's going to depart, he's got to give notice to everybody. But if he's giving a variance under our case law, he doesn't have to give any notice. Yes. But my worry about that is this, that that's not all that we have in the case law. If we talk about a variance, we're talking about the district court being allowed to talk to all of the 3553A factors, which this court talked about all of them. And he doesn't have to worry about how they're affected in the guidelines because he's not departuring. He's varying. So he's set a sentencing guideline. He's come to the appropriate stage. And now he's varying the sentence based on the 3553A factors, and he goes through them and suggests what they are. Now, in that situation, given an abuse of discretion and given his view of the guidelines, him having sat through the whole of what happened and me being on appeal, how do I get around the abuse of discretion? Well, first, the Supreme Court has said it is procedural error not to give the reasons for. . . Well, he gave the reasons. Well, he didn't give any basis for his reasons. He simply made an ad hoc statement that he didn't think that. . . Well, that's not the only thing he did. That. . . He talked about some other things here. Well, I understand there's other bases that the district court made for reducing the sentence. And all dealing with 3553A factors, nature and circumstance of the offense, need for the sentence imposed, and the kinds of sentences available. I mean, all of these things that he talked about were about that. So how do I, on a variance, undo the discretion? I'm talking about departure here. Yes. No, we're talking about deviation. You're correct. It was not a departure. It was a deviation. And my argument is that the Supreme Court says that if you're going to disagree with policy statements, including 3553, which talks about the need to provide adequate deterrence, and this judge simply says, well, deterrence doesn't work in tax cases, and he provided no real basis for that statement. But he also had somebody paying a million and some dollars in restitution. That's true. And it's hard to address your statement because simply there isn't a lot of law out there. That's why we turn to guidelines cases. There's also guidelines cases that say that it's very bad policy to say that if someone comes in and pays the tax they owe, they shouldn't simply get off from the sentence. It's bad policy to allow criminals to simply pay their way out of the crime. However, there are, you know, I was a district judge, so I see myself in these situations. He might have said what he said, and it's in the record what he said, but he also gave him a $20,000 fine. Now, I saw a lot of cases on the district court where we had embezzlement. We had other cases where money was taken from others. And, frankly, the victim was never helped by me sending the person to prison. The victim was only helped when they got the money. And so in the district court where I was, I could always send him down to the county jail and he could work out of the county jail and pay them off, and therefore he had some deterrence as well. But the big problem was trying to get the victim their money and give some deterrence, which he said was the fine. Well, I mean, I agree that restitution. If that's the way it is, then how do I get out of abuse of discretion? I mean, I agree that restitution is one of the aims, but it's not the overriding aim of the penal system. I think if you look at 3553, deterrence is one of the main aims. And if we simply allow people to commit crimes and then pay their way out of them, that will have no deterrent effect. And we're at a place in time right now that we're seeing this increase in escalation of white-collar crimes, and some of that is due to the fact that simply the sentences are not very harsh. People think that, well, if I get caught, I'll just pay my way out of it. So I don't think the restitution alone is enough. The question is, I mean, what you're quarreling with largely is Booker and the post-Booker world. And the question is how do we deal with the fact that this judge sat there for a couple days. I mean, this was one of the longest, I think there were two or three sentencing hearings that went on for quite a while. Yes. And he put it over so we could think about it. And he obviously thought about it. And we all might very much quarrel with what he did. I mean, to me, as you say, the fact is that although we kept talking about how this was extraordinary restitution, all this guy actually did was pay the taxes that he owed anyway. That's correct. And it's unlike all. Has he actually paid them? Well, he's only paid half of them. Was he supposed to have paid them by now? My understanding is he's been making payments, but I don't think he's fully paid them. Oh, we can ask his counsel. But I think he was. Yes. If he did what he said he was going to do, it would all be paid by now. That could be true, but you'd have to check with his counsel. It may not be. So we'll find out. But also, I mean, in addition to the general statement, which is our probably main point of contention, that deterrence doesn't work for tax crimes, which we think is blatantly just erroneous statement and is bad policy. It's also pointing to new ones. Just a minute. I'm sorry I'm interrupting you, but it does seem to me that if that works, it has to work on the basis of the statute, not on the basis of the guidelines. Because the so my question, because he can question the guidelines, but he can't question the statute. So the question is what the 3553A says is the need for the sentence imposed to afford adequate deterrence to criminal conduct. Now, do you read that as meaning that deterrence has to always be a factor, or does adequate deterrence mean whatever factor deterrence is adequate? I think if the district court is going to reject deterrence as a factor, he has to provide more case-specific reasons why and not just eliminate a whole class of crimes. I mean, there's a hundred attorneys that do criminal tax at the U.S. Department of Justice and the tax division, and their whole point is to deter tax crimes. So to simply say that tax crimes, well, aren't deterred by prison sentences, we just that statement is erroneous. And also, I think I'll save my last minute in case you have any questions at the end. Thank you very much. Thank you. Good morning, Mayor Kagan. I want to tell us right away whether your client's basis. I was going to address that question first, Your Honor, and it's my understanding that Mr. Bragg has made complete restitution payments as of today. I believe he had until May of this year to complete the payments, and it's my understanding he did, from speaking with him, complete the payments. May of this year? Meaning of last year? Well, no. The $50,000 payments were supposed to begin in May of 2008, and he would have until May of 2009 to complete the payments. But it's my understanding that he has completed the payments early, as of last month. So I believe that the restitution has been made in full. But the problem, of course, is that he didn't pay anything until he was sentenced for tax evasion. I mean, he didn't just come up with a million two at some earlier point. So as compared to the other cases like Gall and others, he – it's very strange to think that there was anything extraordinary about paying the restitution when he was sentenced to pay the restitution, or going to be sentenced to pay the restitution. There are several things, Your Honor. In the plea agreement, there was no – as the government said in their opening brief, it's not correct that there was a timing schedule that he was supposed to pay before sentence. He – in the plea agreement, he was to make his best efforts to pay. And his best efforts included paying them and making the government whole within one year of being sentenced. And that includes paying 50 percent of it at the time of sentencing. But the district court said in its experience – and Judge Carroll has – was appointed by Judge Carter. He's been on the bench since 1980, 28 years. In his experience, it was extremely unusual and extraordinary that somebody accused of these types of crimes or convicted of these types of crimes would come in and pay the restitution and make the victim whole. And that is something that he considered. Of course, the reason he could is because he had access to the money. Well, he did have access to the money. But there are other individuals who have access to the money and dispute it. Well, it's not a kindness or a favor to the government that people pay what they are ordered to pay. I think it's a very weak argument. But what other arguments were there? Well, that's not the only thing that the court took into consideration. And I think getting to the policy argument that the government was making, yes, we will recognize that the Sentencing Commission does have this policy. But Judge Carroll said in his experience over the 28 years of sentencing individuals in these types of cases that he disagrees with the extent that deterrence, that factor should be taken into account. And he was looking at the totality of the circumstances under 3553A, which is his discretion to do, which as this Court has recognized. The matter that he had, I mean, does the case law suggest that there has to be some basis for such a variance, some factual basis, he has to know something? Well, the extent of the variance does not have to be justified by extraordinary means. A non-guideline sentence does not have to be demonstrated by extraordinary circumstances in the record. I'm not even talking extraordinary circumstances. I mean, intuitively what he says doesn't sound right. I mean, even what he said about people would pay the taxes in advance doesn't make a lot of sense. I mean, obviously, well, I don't know about obviously, it seems pretty apparent that if deterrent works anywhere, it's going to work with regard to taxes, because you're addressing it to a whole lot of people who are not inherently or necessarily about to commit crimes. And the question is, what's going to make them pay taxes in an honor system? So does it matter that he doesn't cite any evidence, just his own gut? Well, I don't think it does. I mean, what he's weighing on is his own experience over the course of 28 years. But I think he has to. Well, what experiences does he really have? He doesn't know who was deterred. He just knows who the people are who go before him. He is relative to the total experience of people in this country. He has almost zero experience. It's the experience of one man who has seen a few criminal defendants. Well, I think in considering the deterrents, the Court correctly calculated the guidelines and took that into account. And in calculating the guidelines, the Sentencing Commission has determined that these guidelines are appropriate. The Court took that into account when considering deterrents. In addition, the Court took into account that here's an individual who was willing to make the government whole in a basis and a substantive way. But he wasn't willing. He was ordered to. That's what makes it so. I mean, if he had paid it a year before he was he signed his plea agreement, that would be one thing. But it was a condition. I mean, he knew he was going to be ordered to do it. Let me ask you a little bit about this, you know, the client's criminal behavior. He filed multiple false returns, didn't he, in the year in which he wasn't paying? It was in 2002, there were four. Four false returns. Yes. And then he didn't acknowledge this until when. How did they finally get him? Well, I can tell you the history of what happened. In 2000, returns were filed in 2001. In 2002, there was a civil investigation conducted. Mr. Bragg did disclose to the civil division of the IRS that the returns were incorrect at that time. False. He said that the government would quarrel with him saying they were false. He said it was a computer error at that time. But then shortly thereafter. Ridiculous. Then shortly thereafter, he acknowledged that they were false. He did have counsel. And in 2004, there was a criminal investigation. Mr. Bragg. So how many years did it take him to pay his taxes for 2001? Eight years? Well, he was ordered to repay the restitution. You say he just paid, completed paying his tax for 2001 just very recently. That would be correct. I would note that, Your Honor, during that period of time, Mr. Bragg in 2001 did pay approximately $800,000 in taxes. There was a large amount that he hadn't paid. That is correct. And there was an investigation that ensued in 2002. Do you know what launched the investigation? I believe that the criminal investigation was launched because there was a notice discrepancy between the state Arizona taxes, which were paid and accurate, and the Federal taxes that were inaccurate and not paid. But I think what's important for this Court to consider, it's not only the deterrence that is a factor. Judge Carroll considered the totality of the 3553A factors. And there are a number of things that mitigate or would justify a variance in this case, and that is Mr. Bragg's, since he, the crime in 2001, he did deal with a substance abuse problem, completing an 18-month rehabilitation program. And in addition to that. Also an order of the court. It was an order of the court, but he did. There are many defendants who don't take advantage of that, and he realized he needed to turn his life around, and I think that speaks to him following the orders of the court. But in addition, you have an individual who since that period of time, prior to any criminal investigation, three years prior to any criminal investigation, similar to the defendant in Gall, that this individual is setting up scholarship funds, raising $100,000 in scholarship funds, has a company that's been committed to hiring and rehiring veterans of the Iraq war. In fact. The company engaged in providing security people. That's true. And here is someone who's a felon who's a key man in the security company. Well, he is now, Your Honor, that would be correct, but that is the nature of his business. But he is somebody who has rehabilitated himself, and in fact, it was genuine, found by the court to be genuine, never argued by the government that it wasn't  What about my question about the statutory role of deterrence? I understand that he can disagree with the guidelines, but he can't disagree with the statute. So the question is, when the statute says as one of the factors to be considered the need for the sentence imposed to afford adequate deterrence to criminal conduct, can he simply say I don't believe in deterrence? Well, no, and I don't think that that's what the judge said in this case. I believe Judge Carroll explained that he disagrees with the extent that deterrence should weigh on his sentencing in this case. He didn't simply just ignore it, because he did take it into account in accurately calculating the guidelines and listening to the government's arguments. He did take it into account, but what he disagreed with was the weight that deterrence should play in sentencing Mr. Bragg in this case, given the totality of the circumstances. Well, it has zero weight in this case. It could, according to Judge Carroll, it could have played zero weight or lesser weight, but that is his discretion. Why do you quibble? What weight did it play except zero? Well, no, it is something that he did take into account, as is his discretion. How did he take it into account? He took it into account to explicitly reject it. Well, he took it into account in accurately recording the guidelines and determining what the guidelines are. He said this exists, but he did not take it into account. Do you understand that? No. I do understand, Your Honor. So it was zero. As in his weighing, it was zero. Let me ask you, counsel. Yes. He didn't give him any prison time, but he gave him probation. Is that correct? It is. And $20,000 fine. Yes. Those would be deterrent factors, Your Honor. And in Gaul, the Supreme Court clearly said that a probationary sentence isn't a grant of leniency. It does carry with it specific deterrents, because there is a sort of... But what does he have to do now on probation? Well, he has to follow the orders of the Court, not commit any new laws. But what specifically restricts his freedom is that he can't travel without contacting probation. And he specifically has a financial restriction from probation that he has to provide to them all his financial records, which they would review. And I don't believe that he can... Isn't it true that you or the defendant's lawyer, I don't know if he was a lawyer below, asked for home arrest and not for probation? No. The defense lawyer, Mr. Valencia, who was joined by another counsel, Mr. D'Amico, asked for house arrest as a condition of probation. All right. So, yes. That's not what he got. No, that's not what he got. He got asked and was asked for. He received a $20,000 fine as a condition of probation, but he did not receive the house arrest. Was that ever explained? Why the judge did not impose house arrest? No, it was not. It was not addressed. It was something that was requested by Mr. Valencia. But it was something that was explained. Thank you very much. Thank you. Thank you, counsel. In my minute, I'd like to make a couple quick points here. First, $20,000 fine. He was getting paid almost $9,000 a month for his father. I'd say that's kind of a slap on the wrist. And $1.2 million that was embezzled from withholding taxes. And he used it by the office. That was added later. There was another... That was added later. The judge had a later hearing where he decided that he better add something, I guess, apparently. On deterrence, I'd like to... What was he added later? The $20,000 fine he added later. On deterrence, I'd like to note that we cite an empirical study that found that longer sentences do indeed deter tax offenses. That's cited in our brief. And I'd also like to note that... And you presented that to district court? No, Your Honor. That case was not presented to district court. My worry is, here we have, counsel, the government's... The probation recommended a range of 27 to 33. Yes. Government recommended the low range. Yes. They didn't come up with any high range for all this conduct that you now suggest is terrible conduct. But they said the lowest part of the range. Then the defendant came in and said, we would like to have home confinement during one year as a part of the probation. And the judge said, we're going to give you probation. We're going to give you a $20,000 fine because we're going to help the victims here. And plus, we're going to give you some deterrence. We're going to give you some probation. And you're suggesting, on a variance with 3553A factors, that I am to undo the discretion of the district court. Yes, Your Honor. We are suggesting that. Well, I've gone over to the deterrence thing. We also disagree and feel it was clearly erroneous. One of the factors the judge relied on is that the defendant's father's business would go belly up if the defendant was put in jail. There's certainly evidence in the record about the father's business. Yeah, but there was no even argument that the business would go defunct if the son was put in jail. There's no evidence that he could have hired someone else. The argument was that he was essential to the business, which certainly sounds like out of this account. There was some argument to that, but even when he's asked what he did at the business, the defendant had a hard time explaining what the business did, if you read the transcript. I did read the transcript. What do you mean by that? Well, he asked what do you do, and he said something about, well, we evaluate system processes for computer installation. Well, he didn't seem to understand the IT part very well, but he did say he basically ran the security part. He didn't have a computer background. There's no evidence that he actually did computer work. But it sounded like the bulk of the business was security, and it sounded like he did know about that. Well, yes, I agree with that, but there is no evidence that the father couldn't hire someone else for $9,000 a month to do what his son was doing. And finally, the judge found this was a one-year matter, but it was only a plea to a one-year matter. It was something that had occurred over many years, that he had been civilly sued by private parties for not paying over the withholding taxes previously. He didn't file corporate returns for 2000 through 2002 for this business, so it isn't simply a one-year matter. It was a one-year plea, and we think that was a clearly erroneous finding for the judge, and that was one of the main things that he relied on in making this downward deviation. Okay, thank you very much.
judges: Noonan, Berzon, Smith